UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

BRIAN MOFFITT and BARBARA MOFFITT,

    Plaintiffs,

v.

24 HOUR FITNESS USA, INC.,

    Defendant.

2:12-CV-00469-PMP-NJK

ORDER

Presently before the Court is Defendant 24 Hour Fitness USA, Inc.'s ("24 Hour Fitness") Motion for Summary Judgment (Doc. #13), filed on August 9, 2012. Plaintiffs Brian and Barbara Moffitt filed a Response (Doc. #16) on August 20, 2012. Defendant filed a Reply (Doc. #20) on September 6, 2012.

**I. BACKGROUND**

On February 13, 2010, Plaintiff Brian Moffitt ("Brian") signed a membership agreement with Defendant 24 Hour Fitness for access to 24 Hour Fitness's facilities. (Def.'s Mot. Summ. J. (Doc. #13), Ex. B.) The membership agreement contained a section captioned "Release of Liability - Assumption of Risk - Buyer's Right to Cancel - Membership Term." (Id. at 1.) This section stated, in part:

> Using the 24 Hour Fitness USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone else causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. In consideration of your participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour</u>, its officers, directors, employees, volunteers, agents and independent contractors <u>will not be liable for any injury</u>, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you, your spouse, guests, unborn child, or relatives resulting from negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not</u>.

1  (Id. (emphasis in original).)  The membership policies also stated that "use of the pool,
2  whirlpool, sauna or steamroom are at your risk."  (Id. at 6.)
3           On February 22, 2010, Brian slipped and fell in the steam room of 24 Hour
4  Fitness's Tempe Sport Club in Arizona when an unsecured floor mat slid out from under his
5  feet.  (Pls.' Opp'n to Mot. Summ. J. (Doc. #16), Ex. 1 at 2.)  Brian sustained injuries to his
6  hands, wrists, feet, and tailbone.  (Id. at 2-3.)  Brian and his wife, Plaintiff Barbara Moffitt,
7  brought suit in Nevada state court against 24 Hour Fitness for negligence and loss of
8  consortium.  (Pet. for Removal (Doc. #1), Ex. A.)  Defendant removed the action to this
9  Court on March 20, 2012.  (Pet. for Removal.)
10          Defendant 24 Hour Fitness now moves for summary judgment, arguing Brian
11 expressly assumed the risk of using the facilities pursuant to the club membership
12 agreement's release clause, and his negligence claim therefore is barred.  Alternatively, 24
13 Hour Fitness argues Brian impliedly assumed the risk of the inherent dangers of using a
14 steam room, including the possibility he might slip and fall.  Finally, 24 Hour Fitness argues
15 Barbara Moffitt's loss of consortium claim is derivative of Brian's claim, and thus also
16 fails.
17          Plaintiffs respond that release clauses to avoid negligence liability are void as
18 against Nevada public policy.  Alternatively, Plaintiffs contend issues of fact remain as to
19 whether the contract spells out the parties' intentions and expressly demonstrates the intent
20 to release 24 Hour Fitness from liability.  Plaintiffs also argue issues of fact remain as to
21 whether 24 Hour Fitness knew about the loose mat in the steam room, whether it took any
22 measures to remedy the situation, and whether any such precautions were timely and
23 reasonable.  As to implied assumption of risk, Plaintiffs argue the evidence does not show
24 Brian assumed the risk of the conditions in the steam room on the date of the accident.
25 Finally, Plaintiffs argue that if Brian's claims survive summary judgment, so should
26 Barbara Moffitt's loss of consortium claim.

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

Express assumption of risk is "a contractual undertaking that expressly relieves a putative defendant from any duty of care to the injured party" because the injured party has "consented to bear the consequences of a voluntary exposure to a known risk." Mizushima v. Sunset Ranch, Inc., 737 P.2d 1158, 1159 (Nev. 1987), overruled on other grounds by Turner v. Mandalay Sports Ent't, LLC, 180 P.3d 1172, 1177 (Nev. 2008). Contractual exculpatory provisions which seek to relieve a person for negligence are "generally regarded as a valid exercise of the freedom of contract" under Nevada law. Miller v. A & R Joint Venture, 636 P.2d 277, 278 (Nev. 1981) (per curiam). However, contractual exculpatory clauses are disfavored in the law, and courts in Nevada strictly construe such clauses against the party seeking immunity from liability. Agric. Aviation Eng'g Co. v. Bd. of Clark Cnty. Comm'rs, 794 P.2d 710, 712-13 (Nev. 1990).

To be enforceable, a contractual exculpatory provision must set forth the contracting parties' intentions with "the greatest particularity," and expressly state the intent

1  to release liability.  Id. at 713 (quotation omitted).  Such an intention cannot be inferred
2  from "words of general import."  Id. (quotation omitted).  For example, where a horse
3  farm's sign-up sheet did not specifically indicate customers were consenting to assume the
4  risk of injury caused by the horse farm's negligence, express assumption of the risk did not
5  bar the injured customer's suit for negligence.  Mizushima, 737 P.2d at 1161.  The party
6  seeking immunity from liability bears the burden of establishing it is entitled to immunity
7  under a contractual exculpatory clause.  Agric. Aviation Eng'g Co., 794 P.2d at 713.

8        Contract interpretation is a question of law for the Court.  Lehrer McGovern
9  Bovis, Inc. v. Bullock Insulation, Inc., 197 P.3d 1032, 1041 (Nev. 2008) (en banc).  The
10 Court construes an unambiguous contract according to its plain language.  Sheehan &
11 Sheehan v. Nelson Malley & Co., 117 P.3d 219, 223-24 (Nev. 2005).  A contract is
12 ambiguous if it is "subject to more than one reasonable interpretation."  Anvui, LLC v. G.L.
13 Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007).  When interpreting a contract, "the court
14 shall effectuate the intent of the parties, which may be determined in light of the
15 surrounding circumstances if not clear from the contract itself."  Sheehan, 117 P.3d at 224
16 (quotation omitted).  "The parties' intentions regarding a contractual provision present a
17 question of fact."  Anvui, LLC, 163 P.3d at 407.

18       Here, the 24 Hour Fitness membership agreement contains an express,
19 unambiguous exculpatory clause which identifies the potential risk of injury and states that
20 by entering into the membership agreement, Brian consented to assume the risk of injury
21 caused by 24 Hour Fitness's negligence, whether an injury was related to exercise or not.
22 Although Plaintiffs contend issues of fact remain regarding whether the contract spells out
23 the parties' intentions and expressly demonstrates the intent to release 24 Hour Fitness from
24 liability, contract interpretation is a question of law for the Court.  Plaintiffs have not
25 identified any ambiguity in the contractual language.  Even if interpretation of the
26 exculpatory clause could raise factual issues in this case, Plaintiffs have not identified what

those issues are nor have they presented any evidence raising a genuine issue of fact regarding the parties' intent in this case.

Plaintiffs contend exculpatory clauses are void as against Nevada public policy, citing Barnes v. Western Union Telegraph Company, 50 P. 438, 440 (Nev. 1897). However, Barnes does not stand for the proposition that contractual exculpatory clauses are void as against public policy as a general matter in Nevada. Plaintiffs concede as much by citing to Agricultural Aviation Engineering Company, which stated that such clauses are enforceable. Moreover, Barnes is distinguishable. In Barnes, a telegraph company failed to timely deliver a message to the plaintiff's brother wherein the plaintiff requested his brother wire him a ticket. 50 P. at 438. Having received no ticket, the plaintiff walked a great distance, and was severely injured during his travels. Id. Among the telegraph company's defenses was reliance on an exculpatory contractual provision which provided as follows:

> To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the original office for comparison. For this, onehalf the regular rate is charged in addition. It is agreed between the sender of this message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, whether happening by the neglect of its servants or otherwise, beyond the amount received for sending the same.

Id. at 439.

The Nevada Supreme Court refused to enforce the exculpatory provision because the contracting parties did not intend the clause to restrict liability based on the telegram being an unrepeated message where the injury resulted from a complete failure of delivery, rather than from an error that could have been corrected through repetition of the message between the operators. Id. at 439-40. The Nevada Supreme Court further concluded that if the telegraph company in fact intended for the exculpatory language to relieve it of liability even for errors which would not be remedied through repetition, "then, evidently, its object was to deceive its patrons, and to entrap them into unconsciously relieving it from liability

for nonperformance of a plain legal and moral obligation." Id. at 440.  The Court concluded that if that was the intent behind the contractual clause, then the telegraph company would be "under no obligation to deliver any unrepeated message," and thus "such stipulations, exacted and assented to, are generally treated as unreasonable and void." Id.

Here, in contrast, the exculpatory clause unambiguously sets forth the parties' intent to relieve 24 Hour Fitness of liability arising out of its own negligence.  The exculpatory clause does not relieve 24 Hour Fitness of its primary contractual obligation to provide health club facilities to its patrons.  Nor does it reflect an attempt to deceive 24 Hour Fitness's customers into waiving liability based on technicalities unrelated to the plaintiff's injuries.  The exculpatory clause therefore is not unreasonable or void under Barnes.

Finally, Plaintiffs rely on Konig v. Nevada-California-Oregon Railway, 135 P. 141 (Nev. 1913), to argue that an exculpatory clause does not apply where the defendant was put on notice of a dangerous condition yet failed to timely and reasonably remedy the condition.  In Konig, the Nevada Supreme Court stated that exculpatory clauses in contracts between an employer and an employee "are nothing but an attempt to make laws under the guise of rules, and, so far as they are claimed to operate as a contract against the negligence and dereliction of the defendant, they are void as against public policy." 135 P. at 158. Konig arose in the employment context and was grounded in the rationale that "courts generally . . . have looked with disfavor upon any attempt of the master to create or impose between himself and the servant any rule claiming to operate as a contract against the negligence and dereliction of the master." Id.  The Nevada Supreme Court expressed a similar concern in Lawson v. Halifax-Tonopah Mining Company, 135 P. 611 (Nev. 1913). In Lawson, the Nevada Supreme Court noted that by enacting a statute which prohibited contractual releases from barring employees' personal injury lawsuits,

///

> the Legislature manifestly sought to avoid the various and devious contracts and agreements so often required by employers as a condition precedent to the obtaining of employment, and also to guard against the many and devious ways by which employers seek to avoid the consequences of their own acts, or the acts of their agents, by obtaining releases therefrom by the signing of instruments at the hands of the injured party tending to establish a settlement.

135 P. at 612.  No similar concerns arise in the context of a release of liability between a member of the general public and a fitness club.

The membership agreement contains an express, unambiguous exculpatory clause pursuant to which Brian consented to assume the risk of injury caused by 24 Hour Fitness's negligence, whether related to exercise or not.  The clause bars Brian's negligence claim against 24 Hour Fitness in this action, and 24 Hour Fitness therefore is entitled to summary judgment.  Additionally, because Barbara Moffitt's loss of consortium claim is derivative of Brian's negligence claim, 24 Hour Fitness is entitled to summary judgment on the loss of consortium claim as well.  <u>Turner</u>, 180 P.3d at 1178.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant 24 Hour Fitness USA, Inc.'s Motion for Summary Judgment (Doc. #13) is hereby GRANTED.  Judgment is hereby entered in favor of Defendant 24 Hour Fitness USA, Inc. and against Plaintiffs Brian Moffitt and Barbara Moffitt.

DATED:  March 14, 2013

_____
PHILIP M. PRO
United States District Judge